UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| FLANDREAU SANTEE SIOUX TRIBE, A FEDERALLY RECOGNIZED INDIAN TRIBE;<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, HON. SONNY PERDUE, IN HIS OFFICIAL CAPACITY; AS SECRETARY OF AGRICULTURE,<br><br>Defendants. | 4:19-CV-04094-KES<br><br>ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION |

Plaintiff, Flandreau Santee Sioux Tribe, moves for a temporary restraining order or preliminary injunction enjoining defendants, the United States Department of Agriculture (USDA) and Sonny Perdue, Secretary of Agriculture, from any action that interferes with the Tribe's hemp production. Docket 4. The Department of Agriculture and Secretary Perdue resist the motion. Docket 23. For the following reasons, the motion for a temporary restraining order or preliminary injunction is denied.

**BACKGROUND**

In December, the Agriculture Improvement Act of 2018, known as the 2018 Farm Bill, was signed into law. Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490. The bill removed "hemp" from Schedule I of the Controlled Substance Act to allow for hemp production by states and

tribes under federal law. *See* 7 U.S.C. § 1639o(1). The statute permits states and tribes to opt for either (1) primary regulatory authority, or (2) USDA authority over the proposed hemp production.[1] *See* 7 U.S.C. § 1639o-1639s. A state or tribe requesting to have primary authority over its production of hemp is to submit a plan to the Secretary of Agriculture. 7 U.S.C. § 1639p. Known as a "297B plan," the plan must include seven categories outlined in the statute. 7 U.S.C. § 1639p(a)(2)(A). The plan is to be approved or disapproved by the Secretary of Agriculture "not later than 60 days after receipt." 7 U.S.C. § 1639p(b)(1). If a state or tribe does not wish to submit a plan, the state or tribe has a second option and can seek to produce hemp under the USDA plan. 7 U.S.C. § 1639q. Similarly, if a plan is not approved because it was disapproved by the Secretary of Agriculture or was never submitted, the state or tribe's hemp production is subject to the USDA plan. 7 U.S.C. § 1639q(a)(1). Finally, the 2018 Farm Bill provides that the Secretary of Agriculture has explicit authority to set "regulations and guidelines that relate to the implementation of [7 U.S.C. §] 1639p and [7 U.S.C. §] 1639q." 7 U.S.C. § 1639r(b).

On February 27, 2019, the USDA issued a notice that the agency had begun gathering information to promulgate rules and regulations related to the 2018 Farm Bill and the production of hemp in the United States. Docket 1 ¶ 15. The notice advised growers that USDA planned to issue regulations

---

[1] During oral argument, the Tribe also contended that 7 U.S.C. § 1639p(f) authorizes the production of hemp based on "other Federal laws (including regulations)."

relating to the production of hemp in the fall of 2019. *Id.* ¶ 52. On March 8, the Flandreau Santee Sioux Tribe submitted its proposed 297B plan to the USDA to produce hemp under 7 U.S.C. § 1639p. *Id.* ¶ 13. The submitted plan referenced Title 30 of the Flandreau Santee Sioux Tribe's Law and Order Code, wherein the Tribe codified its proposed industrial hemp plan. *Id.* ¶ 47; *see also* Docket 1-1. On March 13, the Tribe participated in a listening session. Docket 1 ¶ 49. A week later, on March 19, the Tribe met with USDA to discuss the submitted plan. *Id.* ¶ 50. On April 24, Secretary Perdue responded to the Tribe's submitted plan, noting that USDA would approve or deny the plan within 60 days after regulations were issued by the agency. Docket 1-2. The letter reiterated that USDA's goal is to "issue regulations in the fall of 2019." *Id.* On May 2, the Tribe participated in a USDA hemp listening session. Docket 24 ¶ 14. On May 6, the Tribe submitted a letter to USDA requesting a waiver of regulatory requirements so that the Tribe could plant in the 2019 season. Docket 1-1 at 57. A meeting between the Tribe and USDA was held on May 13 to discuss the waiver. Docket 1 ¶ 51. On May 24, the Tribe filed its complaint and motion for temporary restraining order or preliminary injunction before this court. Dockets 1, 4. A motion hearing was held June 5, 2019. Docket 25.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). To determine whether

3

preliminary relief such as a preliminary injunction or a temporary restraining order is appropriate, the court considers the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on [the nonmovant]; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (alterations in original) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). The *Dataphase* test for preliminary injunctive relief is a flexible analysis. *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999). Thus, when weighing these factors, "no single factor is in itself dispositive." *Calvin Klein Cosmetics v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir. 1987). "[A]ll of the factors must be considered to determine" whether the balance weighs toward granting the injunction. *Id.*

In addition, a "court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires" court intervention. *Hubbard*, 182 F.3d at 601. The "burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when, as here, granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits." *Calvin Klein Cosmetics*, 815 F.2d at 503; *see also Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 64 (8th Cir. 1993) (citation omitted). When a plaintiff "is asking the Court to order affirmative change . . . to obtain a

4

mandatory injunction requiring such action, the Plaintiff bears a heavy burden." *Wigg v. Sioux Falls Sch. Dist. 49-5*, 259 F. Supp. 2d 967, 971 (D.S.D. 2003) (citing *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993)). "It is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Disfavored injunctions do not merely preserve the parties' positions pending litigation, but instead mandate action instead of prohibiting it, alter the status quo, or grant all the relief that the movant would win at trial. *See Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012); *see also Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005).

**DISCUSSION**

**I.      The Tribe Requests Relief on the Merits at this Preliminary Stage**

In the Tribe's complaint, the Tribe "seeks a writ of mandamus directing the Secretary to approve the Tribe's plan as meeting the mandatory criteria set by statute and that this approval be issued immediately." Docket 1 ¶ 18.

In the Tribe's motion for temporary restraining order and preliminary injunction, the Tribe requests "a declaration that the Tribe's hemp production . . . may lawfully proceed . . ." and an injunction "enjoining USDA from any action that interferes with such production, while the case is pending." Docket 4 at 1. The All Writs Act provides that, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages

5

and principles of law." 28 U.S.C. § 1651. A form of jurisdiction is also available under 28 U.S.C. § 1361 that provides district courts with original jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." To qualify for mandamus, a plaintiff must satisfy three requirements: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 8312 (2d ed. 2019). Finally, the Administrative Procedure Act, codified at 5 U.S.C. § 706(1), authorizes a district court to "compel agency action unlawfully withheld or unreasonably delayed." The Eighth Circuit has found that relief under § 706(1) is similar to a request for a writ of mandamus. *See Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, 462 (8th Cir. 2018) (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004)). The Supreme Court in *Norton* concluded that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" 542 U.S. at 64 (emphasis in original). Relief under the APA, like a writ of mandamus, is "an extraordinary remedy reserved for extraordinary situations." *Org. for Competitive Markets*, 912 F.3d at 462 (citation omitted).

The relief requested by the Tribe is not preliminary injunctive relief designed to preserve the status quo. Rather, the requested relief is relief that would alter the status quo and grant the Tribe relief on the merits of its

complaint. For the court to enjoin "the USDA from any action that interferes with such production, while the case is pending," the court would have to issue a writ that would compel the USDA to approve or disapprove the Tribe's submitted plan, or the court would have to declare that the USDA is improperly withholding the Tribe's 297B plan pending the promulgation of regulations. Both of these actions would alter the current status quo, which is that the Tribe has not previously grown hemp. This is unlike a case where a plaintiff requests a preliminary injunction to prevent the closure of existing educational offices pending resolution of a complaint that sought a writ of mandamus and request for declaratory relief. *See Yankton Sioux Tribe v. Kempthorne*, 442 F. Supp. 2d 774, 781 (D.S.D. 2016). Both a declaration and writ of mandamus are forms of relief that may be obtained after a full trial on the merits but not at the preliminary relief stage.

The Tribe also advanced the argument at the motion hearing that it is able to grow hemp under 7 U.S.C. § 1639p(f) and the "other Federal laws (including regulations)" language. Docket 25. The Tribe argued that under a myriad of current federal laws, such as the Clean Water Act and the Native American Graves Protection and Repatriation Act, the Tribe can produce hemp. *Id.* But, even if this court were to issue a preliminary injunction requiring the USDA to act and immediately review the Tribe's plan, the Tribe would still need the court to declare that the Tribe can produce hemp under these other Federal laws, which is declaratory relief that could be obtained after a trial on the merits. *See Dakota Indus., Inc.*, 944 F.2d at 440. Thus, because the requested

7

relief would alter the status quo and would give the movant substantially the relief it would obtain after a trial on the merits, the Tribe bears a heavier burden that the preliminary injunction should be granted under an analysis of the *Dataphase* factors.

II.  **Likelihood of Success on the Merits**

"Success on the merits has been referred to as the most important of the four factors." *Roudachevski*, 648 F.3d at 706. Generally, this factor requires the moving party to demonstrate that it has " 'a substantial likelihood of success on the merits[.]' " *Planned Parenthood Minn., N.D., S.D., v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008) (quoting *Richenberg v. Perry*, 73 F.3d 172, 172-73 (8th Cir. 1995) (per curiam)). Thus, "[a]t the early stage of a preliminary injunction motion, the speculative nature of this particular inquiry militates against any wooden or mathematical application of the test." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir .1998).

The Tribe argues that it has a strong likelihood of success on the merits because the 2018 Farm Bill requires "nondiscretionary action within 60 days of receiving a state or tribal plan . . . ." Docket 5 at 20. The Tribe argues that the plain language of 7 U.S.C. § 1639p(b)(1) mandates that the Secretary of Agriculture approve or deny submitted 297B plans within 60 days of receipt. *Id.* at 22. The Tribe argues that the congressional intent and legislative record support this reading. *Id.* at 23. Based on this statutory interpretation, the Tribe claims that USDA is acting in "disregard of its congressionally mandated duties" and must approve or deny its submitted plan within 60 days. Docket 1

8

¶ 1. Finally, the Tribe argues that 7 U.S.C. § 1639r(b) does not apply to 7 U.S.C. § 1639(p) because there is no reference to § 1639r in that subsection. Docket 25.

USDA and Secretary Perdue argue that, when reading the 2018 Farm Bill as a whole, the Secretary is directed to promulgate regulations and guidelines to implement hemp production statutes prior to the 60-day clock beginning to run. Docket 23 at 12-13. Although 7 U.S.C. § 1639(p)(b)(1) does indicate that the Secretary is to approve or deny a plan within 60-days of receipt, the statute also states that the Secretary has sole authority "to promulgate Federal regulations and guidelines that relate to the production of hemp, including Federal regulations and guidelines that relate to the implementation of section 1639p and 1639q of this title." 7 U.S.C. § 1639r(b); *see* Docket 23 at 13. Thus, USDA and Secretary Perdue argue that read as a whole, the Secretary must promulgate regulations and guidelines for the implementation of § 1639p prior to the 60-day timeline in § 1639(p)(b)(1). *Id.*

"The 'long established plain language rule of statutory interpretation' requires 'examining the text of the statute as a whole by considering its context, object, and policy.' " *Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 532 F.3d 797, 803 (8th Cir. 2008) (quoting *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 899 (8th Cir. 1999)). Statutory provisions that are part of the same recodification should be read as much as possible to be in harmony with each other. *See Somers v. City of Minneapolis*, 245 F.3d 782, 787 (8th Cir. 2001). A court must construe " 'as a whole' . . . various subparts and the ways in which

these subparts relate to one another." *Martin v. Fayram*, 849 F.3d 691, 696 (8th Cir. 2017) (quoting *Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002).

Here, the Tribe has not shown that it has a substantial likelihood of success on the merits. When reading the text of the statute as a whole, and considering its context, object, and policy, 7 U.S.C. § 1639r(b) gives the Secretary of Agriculture explicit authority to set "regulations and guidelines that relate to the implementation" of both 7 U.S.C. § 1639p and 7 U.S.C. § 1639q. Reading the statute as whole leads to the conclusion that Congress intended that the Secretary of Agriculture promulgate regulations not just for states and tribes that opt for the USDA plan under § 1639q, but also to promulgate regulations for states and tribes that opt for primary regulatory authority and a 297B plan under § 1639r. Although the Tribe argues that there is no mention of 7 U.S.C. § 1639r(b) in § 1639(p), the section under which it seeks to produce hemp, there is also no mention of § 1639r(b) in § 1639(q), the section under which hemp growers may proceed under the rules and regulations of the USDA plan. Because there is no explicit reference to § 1639r(b) in either § 1639p or § 1639q, § 1639r(b) relates back and applies to the implementation of guidelines for both sections. Thus, a reading of the statute as a whole suggests that rules and regulations must first be promulgated prior to the 60-day window for 297B plans to be approved or denied.

Next, considering the context of the 2018 Farm Bill, the Tribe's statutory interpretation is also not likely to succeed on the merits. The Tribe argues that

the congressional record supports its interpretation of 7 U.S.C. § 1639p. But the context of the legislative history suggests otherwise. Representative Conway's house conference report aligns with the statutory reading by the USDA. The report indicates that "[t]he consultation with the Attorney General should not alter the 60 day requirement to approve or deny a plan." H.R. Rep. No. 115-1072, at 737 (2018). This suggests that the Secretary has a duty to consult with the Attorney General to approve or disapprove a submitted 297B plan, and this consultation should not delay the 60-day timeline. *See also* 7 U.S.C. § 1639p(b)(3). The Secretary also has a separate obligation to consult with the Attorney General to promulgate rules and regulations. 7 U.S.C. § 1639r(a)(1)(B). When read in context, the legislative history suggests that the Secretary will first promulgate rules and regulations for the implementation of both 7 U.S.C. § 1369p and § 1639q prior to reviewing plans submitted under § 1639p.

Finally, the object and policy of the 2018 Farm Bill suggests that the Tribe is not likely to succeed on the merits. The Secretary of Agriculture cannot approve or deny 297B plans without setting regulations to evaluate whether the state or tribe's plan complies with the seven requirements of 7 U.S.C. § 1639p(a)(2)(A). Unlike the 2008 Farm Bill, the 2018 Farm Bill did not direct the USDA to promulgate the regulations by a certain date. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, § 11006, 122 Stat. 1651 (directing that the USDA promulgate regulations not later than 2 years after the date of enactment). The policy of the 2018 Farm Bill is to transition

11

the regulation of hemp from the Drug Enforcement Agency to the Secretary of Agriculture so states and tribes can produce hemp. The object and policy of the 2018 Farm Bill suggests a statutory interpretation under which the Secretary and USDA has promulgated rules and regulations prior to approving submitted plans by states and tribes.

Thus, reading the 2018 Farm Bill as a whole, and considering the context, object, and policy of the statute, the court finds that the Tribe will not likely succeed on the merits. The statute provides exclusive authority to the Secretary to issue rules and regulations that relate to the implementation of 7 U.S.C. § 1639p, the same section under which the Tribe seeks to produce hemp. A harmonious reading of the statute lends to the likelihood that the 60 day window to approve or deny a plan does not begin until regulations are promulgated by the USDA. Thus, the likelihood of success on the merits under the *Dataphase* factors weighs against the Tribe.

### III.   **Threat of Irreparable Harm**

The second major *Dataphase* factor is that the movant must show that it is "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). A movant's failure to demonstrate irreparable harm is sufficient to deny a motion for preliminary injunction. *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs

heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The Tribe argues that the Tribe will be excluded from the 2019 planting season if the Department of Agriculture does not approve its plan. Docket 5 at 15. The Tribe argues that if it cannot plant during the 2019 season, the Tribe will lose a projected $17 million in income. *Id.* If the Tribe does not receive these funds, the Tribe will have less money to provide to tribal governmental programs and services such as health care services, law enforcement services, and other daily functions. *Id.* This will reduce the quality of services to tribal members.

USDA and Secretary Perdue argue that an estimate of potential future income and earnings does not satisfy a claim of irreparable harm. Docket 23 at 9. They argue that a movant cannot meet its burden of showing a claim of irreparable harm by pointing to economic loss unless "the loss threatens the very existence of the [plaintiff's] business, because economic loss does not, in and of itself constitute irreparable harm." *Brady v. Nat'l Football League*, 640 F.3d 785, 797-95 (8th Cir. 2011) (internal citation omitted).

Here, the threat of irreparable harm factor weighs in favor of the Tribe. The Tribe likely does not have a monetary remedy at law because USDA will not be subject to pay compensatory damages based on its sovereign immunity,

13

and much of the Tribe's potential loss is economic loss. Thus, this *Dataphase* factor weighs in favor of the Tribe.

IV. **Balance of Harms and Public Interest**

The final two *Dataphase* factors are the balance of harms and public interest. 640 F.2d at 113. When the federal government or agency is the defendant, the final two factors can "merge" into one. *Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting, "[t]hese factors merge when the Government is the opposing party."). The balance of harms factor requires the court to evaluate the severity of the impact on the defendant should the injunction be granted and the hardship to the plaintiff should the injunction be denied. *PCTV Gold, Inc. v. SpeedNet, LLC.*, 508 F.3d 1137, 1145 (8th Cir. 2007).

The Tribe argues that the issuance of preliminary relief would serve the public interests because the Tribe's ability to grow hemp will "create jobs, decrease dependence on tax-payer funded programs, improve the health and welfare of American citizens, and add to the local economy." Docket 5 at 19. The Tribe argues that the public has an interest in tribal self-government and self-sufficiency, and that the lack of preliminary relief would lead to the continuing loss of tribal services to both tribal members and non-members. *Id.* Finally, the Tribe argues that the harm faced by USDA and Secretary Perdue is "negligible" compared to the inability of the tribe to fund vital governmental services through hemp production. *Id.* at 18.

On the other hand, USDA and Secretary Perdue argue that the public interest weighs in their favor, because the public has an interest in federal

governmental agencies promulgating rules and regulations for a consistent implementation of Congressional statutes and agency programs. Docket 23 at 18. They argue that the public interest is not served by "court-authorized production of hemp" without sufficient agency regulations and safeguards being in place. *Id.* at 19.

Weighing these factors, the public interest is well-served by having regulations and rules in place for the proper implementation of plans under both 7 U.S.C. § 1639p and § 1639q. Although the Tribe has shown an irreparable harm, the impact on the USDA and Secretary Perdue if an injunction is granted is severe. Although there is a public interest from the Tribe's standpoint, the final two factors weigh against the Tribe and the issuance of preliminary relief.

## CONCLUSION

At this stage, "the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. Here, the Tribe's requested intervention by the court would not preserve the status quo until the merits are determined but would change the existing status quo. An injunction or temporary restraining order by the court would not act to restore the current status of the parties. Instead, the Tribe is in essence requesting the court issue a writ of mandamus or a declaratory judgment before the merits of the case are resolved. The movant for a preliminary injunction bears a heavy burden when seeking affirmative change from a court. *See Sanborn Mfg. Co.*,

997 F.2d at 486. Although the threat of irreparable harm factor weighs in favor of the Tribe, the Tribe has not met its heavy burden and has failed to show a probability of success on the merits. The balance of all the *Dataphase* factors weighs against the Tribe. Thus, it is

ORDERED that Flandreau Santee Sioux Tribe's motion for temporary restraining order or preliminary injunction (Docket 4) is denied.

Dated June 6, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE